## Case No. 1,787.

### BRADLEY v. SOUTH CAROLINA PHOSPHATE AND PHOSPHATIC RIVER MIN. CO.

### [1 Hughes (1877) 72.] [1]

### Circuit Court, D. South Carolina.

##### PUBLIC LANDS—GRANTS—EXCLUSIVENESS.

1. The act of assembly of South Carolina, of March 1st, 1870, "gives and grants" to the persons it names, "the right to dig, mine, and remove," for twenty-one years "from the beds of the navigable streams and waters within the jurisdiction of the state, the phosphate rocks and the phosphate deposits" contained therein, and requires the grantees to pay the state one dollar per ton for every ton removed, requiring a deposit of $500 in cash as a license for, and a bond in the penal sum of $500, to be filed, conditioned for the faithful payment of the amounts accruing to the state. *Held*, on a bill of injunction brought by the grantees against the defendants, a company subsequently chartered by the legislature, with similar rights and powers to those conferred upon the complainants by the statute of 1st March, 1870, that the complainants derived no exclusive privilege from the act first in date, and that the injunction must be refused and the bill dismissed.

[Cited in State v. Coosaw Min. Co., 47 Fed. 226.]

[See Rice v. Minnesota & N. W. R. Co., 1 Black (66 U. S.) 360.]

2. This case distinguished from that of Massot v. Moses, 3 S. C. 168; and assimilated to that of Doe v. Wood, 2 Barn. & Ald. 724.

[In equity. Bill by William L. Bradley against the South Carolina Phosphate and Phosphatic River Mining Company for injunction. Dismissed.]

BOND, Circuit Judge. The bill in this case alleges that on the first of March, 1870, the general assembly of the state of South Carolina passed an act, entitled "An act to grant certain persons therein named, and their associates, the right to dig and mine in the beds of the navigable waters of the state of South Carolina, for phosphate rocks and phosphate deposits" [Sess. Laws, 381]. The act, by its first section, "gives and grants to the parties therein named, and to such other

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

persons as they may associate with them," the right to dig, mine, and remove, for the full term of twenty-one years, from the beds of the navigable streams and waters within the jurisdiction of the state of South Carolina, the phospate rocks and the phosphate deposits; and requires by its second section that they should pay the state one dollar per ton for every ton of such deposits or rock removed; and the third section of the act requires that the grantees file a bond in the penal sum of $500, conditioned that they should make proper returns of the amount of phosphatic deposits removed, and that they should pay into the treasury, before commencing business under said grant, the sum of $500 as a license fee. The bill alleges the compliance of the parties with the terms of the grant, and asserts that by such compliance there was granted to the complainant and his associates the phosphate rocks and deposits themselves contained in the navigable waters of the state for the term of twenty-one years, and that by virtue of said act they have exclusive right to dig, mine, and remove such deposits. The bill shows that, notwithstanding this, the general assembly on March 9th, 1871, by virtue of an act entitled "An act to charter the South Carolina Phosphate and Phosphatic River Mining Company" [Sess. Laws, 688], granted to the persons therein named, and their associates, the right to dig and mine in the beds of the navigable streams and waters of the state for phosphate rocks and phosphate deposits, upon much the same terms as had been required in the first-named act. Under this second act the last-named company had proceeded to remove phosphates from the beds of the navigable waters in disregard of the exclusive right of the complainant. The prayer of the bill is for subpoena and an injunction in the usual form.

The answer denies the exclusive right claimed by the complainant, and also the right of the complainant, Bradley, to sue in his own name, who does so merely upon an allegation that he, as a stockholder in the South Carolina Company, had requested his associates in the company to litigate the matter in controversy, and upon its refusal had brought suit himself.

The question to be considered, which is decisive of the case, is whether or not the grant to the complainant's company, by the act of March 1st, 1870, is a grant of an exclusive right to dig, mine, and remove phosphatic deposits in the beds of the navigable waters of the state. The terms of a grant which are claimed to confer an exclusive right must be clear and explicit, and without ambiguity must plainly express the intention of the parties. The grantees can claim nothing which is not clearly given by the act. The grant of the right to dig for and remove the phosphate rocks in a particular place, is the grant of an incorporeal right. It is the grant of a right to be exercised upon the soil of another, to exercise which without permission would be a trespass in the grantee, and unless there be words in the grant which clearly express the intention of the parties to convey the whole body of the mineral to be dug and removed, it does not convey a corporeal hereditament, or any right in the soil itself. But even were the words "the right" to be held prima facie to grant an exclusive right, other words of the act of March 1st, 1870, clearly show that this was not the intention of the legislature when it passed that act. The grantees are not required by the act to pay for all the phosphate rocks in the beds of the navigable waters a gross sum, but are to pay the sum of one dollar per ton for every ton which they shall dig, mine, and remove, which, it seems to us, is conclusive that this was not a sale of all the rocks, but was a sale of so much as the grantees should choose to mine and remove at that price. And when the second section of the act of March 1st, 1870, provides that the grantees, before commencing, shall pay a license fee of $500 for the privilege granted, it clearly shows that it was the intention of the legislature to grant a mere incorporeal right, and that the title to the phosphate rock was in the grantee only upon digging and securing it. Under the complainant's construction, he might hold possession of all the phosphate rocks of the state for twenty-one years without having paid one cent for them to the state, for he is to pay nothing before commencing business, and by the terms of the act it is at his option whether he will ever begin to dig or mine.

This case is easily to be distinguished from the case of Massot v. Moses, 3 S. C. 168, which is relied upon by complainant in support of his claim to an exclusive right. In that case the court found words which gave the exclusive right. The grantor "sold and conveyed" the right and privilege of mining and removing all the minerals which the grantee himself found, or which were discovered by any other person, upon the land. The grantee paid a sum in gross equivalent to the value of all the minerals supposed to be on the land. The court held that the words "that may be found by any person or persons, or contained in any part of the land," excluded the grantor himself, and showed an intent to convey an exclusive right; and this, taken in connection with the fact that the consideration paid was an entire sum upon the delivery of the deed, established the intention of the parties. But in the case before us there are no words used which, by implication, could exclude the grantor. There is no sale or conveyance, and no consideration paid, which could possibly be held to be the gross value of the phosphatic rocks in the beds of the navigable waters of the state. It seems to us that this case falls precisely within the rulings of Doe v. Wood, 2 Barn. & Ald. 724. The

grantees, under the act of March 1st, 1870, can claim nothing, as we said before, which is not clearly granted by it. They cannot take anything by implication. Nothing passes but what, in explicit language, is given, and when the intention of the legislature is doubtful, the act must be construed against the grantees. We think the injunction must be refused and the bill dismissed. '